CHIASSON, Judge.
This is an appeal of a judgment of the District Court in an expropriation suit filed by the Department of Highways, plaintiff-appellant, under R.S. 48:441 et seq. The suit was filed to acquire in full ownership certain property owned by the defendants-appellees in Morgan City, Louisiana.
The appellant deposited into the registry of the Court $809,885.00 as just and adequate compensation for the property expropriated and $9,033.00 as severance damages. After a trial on the merits, the District Court awarded the appellants an additional $21,393.00 as just compensation and an additional $390,982.00 as severance damages.
The facts as stated by the District Judge in his Reasons for Judgment are:
“Before the taking, the defendants’ property consisted of one large tract of land, containing 18.9 acres, located in the approximate center of an area comprising the principal business, banking and professional establishments in the City of Morgan City, Louisiana. It was generally rectangular in shape, less and except its north, east and west corners, which had previously been sold. It was bounded as follows: North by Victor II Blvd., a two-lane, main traffic street; East by the Colonial Plaza Shopping Center, a large retail merchandising center; South by U.S. Hwy. 90: and West by Greenwood Street, a four (4) lane main traffic artery. . The property was described as high, well-drained, level and suited for the highest and best use as High Grade, Multi-purpose Commercial. The property was zoned by the City Council of Morgan City, Louisiana, as “P” Planned Commercial.
“After the taking, the defendants’ property was divided into essentially three remainders, designated as Remainders 1, 2, and 3. . The part taken consisted of a tract of land containing 7.016 acres. Remainder No. 1 sometimes referred to as the Northern Remainder consisted of .1565 acres, triangular in shape, and has a front of approximately 114 feet on the south side of Victor II Blvd. Remainder No. 2, sometimes referred to as the Greenwood Remainder, contains 1.322 acres, is more or less triangular in shape, and has a front of 394.08 feet on Greenwood Street. Its depth varies from 241.-16 feet along its northern boundary to almost nothing at its southern tip. It enjoys rto access after the taking except its front on Greenwood Street.
*1042 “Remainder No. 3, after the taking, consists of a tract of land roughly triangular in shape, consisting of 10.4 acres. It is bounded North by 56.01 feet of access to Victor II Blvd.; East by Colonial Plaza Shopping Center, South by U.S. 90 for a distance of 314.24 feet and the control of access to the ramp for a distance of 350 feet, and West by the part taken from which there is no access, along a distance of 674.03 feet. The North-East corner of Remainder No. 1 . has previously been sold.
“In essence then, it is shown that the plaintiff has taken an area of land of 7.016 acres extending from Southeast to Northwest across defendants’ property. “At the start of the trial, the parties entered into a written stipulation (Joint Stipulation-J.S. # 1) as follows:
(1) The value of the tract of land which is the subject of this litigation was $2.72 per square foot prior to the taking.
(2) The proposed highway as it traverses the subject property will contain ramps that will ascend and descend, respectively, from ground level to the level of the elevated highway.
(3) There will be no direct access from the remainders of the subject property to the highway or the ramps. No passage will be permitted beneath the highway or the ramps. There is ingress and egress from the remainder to public streets leading to and from the ramps.
(4) Present construction extends to Federal Avenue in the City of Morgan City west of the property and in the vicinity of Raceland, Louisiana, east of the property. It will be several years before construction will be completed on any portion of the highway through and east of the subject property.
(5) Control of access is as indicated on P-3 attached to Plaintiff’s petition. The showing of a 60' service road along the eastern boundary of the subject property on P-3 is in error and is not a part of the subject property.
(6) The after value of the small triangular remainder on Victor II Boulevard is $4900.00.
(7) The total area of the property before taking is 18.9 acres. The part taken is 7.016 acres. One remainder is .1565 acres. Another is 1.322 acres. And the final remainder is 10.4 acres.
(8) Both parties reserve the right to cross examine appraisers called by the opposite party as to all matters upon which they have based their appraisals and as to their conclusions.
“Additionally, during the trial, the parties further stipulated as follows:
(1) With respect to the part taken (7.016 acres), the value thereof was stipulated to be $831.278.00. (7.016 acres or 305,617 sq. ft. X $2.72 per sq. ft. = $831,278.00). The State had deposited the sum of $809,885, (sic) leaving a difference of $21.393.00 owed to defendants. (See Stipulation of Counsel TR. 90, Vol. I).
(2) With respect to the severance damages sustained by Tract No. 1 on Exhibit D-2, the parties stipulated that the tract contained 6817 sq. ft.; that before the taking its value was $2.72 sq. ft. or a before taking value of $18,-542. After the taking, the tract had a value of $4,900.00, leaving a total severance damage to Tract No. 1 of $13,-642.00. (See Stipulation of Counsel, TR. 88-89, Vol. I).”
Because of the above stipulations the only issues to be decided by the District Court were the severance damages to Tracts II and III, the fixing of expert witness fees, and the award of attorney’s fees to the landowners.
The errors assigned by the appellant are that:
“1. The District Court was in error in not allowing appellant to call Messrs. Cobb and Gehr on cross-examination, as employees who were hired and paid $2,000.00 each by appellees to make an appraisal for them particularly in view of lack of assurance by appellees that these two experts would be called by them with *1043 an opportunity for appellant to cross-examine said appraisers at that time.
“2. The District Court committed manifest error in giving any weight whatsoever to the testimony of Messrs. Williams and Book as to the amount of severance damages to remainders No. 2 and No. 3 and, also, in according no weight to the market data evidence to which the other appraisers testified with respect to remainder No. 2.
“3. The District Court committed manifest error in its determination of whether the Morgan City Zoning Ordinance of 1959 applied as amended in 1970 or as amended in 1975, in finding that said ordinance was largely ignored by those appraisers who had thoroughly investigated it and was given proper consideration by those appraisers least familiar with it, in finding that said ordinance was being enforced without any evidence thereof, in its failure to make any analysis of the effect of the penalty clause or the general variance clause or the special flexible procedure for dealing with proposed developments in the “P-Planned Commercial” zone in either version of said ordinance, in failing to consider the reasonable possibility of amendment of the zoning ordinance in the future in light of the ease of its amendment in the past, and in failing to analyze the fact that zone of undeveloped land for which the classification of “P-Planned Commercial” had been created no longer existed as the single large tract of undeveloped land under control of one ownership in indivisión and that the entire basis of said classification no longer existed — making amendment of the zoning ordinance not only a reasonable possibility but a necessity to make any such classification of any effect whatsoever.
“4. The District Court committed manifest error in finding and granting severance damages of 25% of the before taking value of remainder No. 3.
“5. The District Court committed manifest error in finding and granting severance damages of 50% of the before taking value of remainder No. 2.
“6. The District Court apparently committed an inadvertent error in leaving out of its reasons for judgment and its judgment any mention of awards of expert witness fees to the six appraisers who testified in the case in view of its assurance to Mr. Cobb (R. 721, 1. 10) and its announcement of the amounts it would award to the appraisers (R. 821, 1. 9-R. 823, 1. 17).”
The appellees answered the appeal asking that the judgment of the District Court be amended to increase the award made to $551,914.05 and that the appraisers’ fees be increased to $2,500.00 apiece.
ASSIGNMENT OF ERRORS 1.
Article 1634 of the Louisiana Code of Civil Procedure provides:
“Any party or his representative may be called as a witness and cross-examined by the adverse party without the latter vouching for his credibility, or being precluded from impeaching his testimony, and immediately thereafter the witness thus called may be examined or cross-examined to the extent otherwise permitted by law upon the subject matter of his examination in chief by such adverse party. The court may permit the recall and further cross-examination of the party or of his representative as often as it deems such action to be in the interest of justice. “ ‘Representative’ as used in the paragraph above and in Article 1428(2) means an officer, agent or employee having supervision or knowledge of the matter in controversy, in whole or in part, whether or not he is in the employ of or connected with the party at the time his testimony is taken.”
In State v. Cook, 124 So.2d 221 (La.App. 2nd Cir. 1960) it was held that an appraiser whose appraisal was the one accepted by the Highway Department in a “quick taking” proceeding could be called by the defendant in their case in chief under cross examination. The Court in considering this point said:
“We regard the point raised as being not only supertechnical but purely academic, *1044 for two reasons: First, upon presentation of oral argument in answer to questions from the Bench, counsel for plaintiff conceded that application had been made for writs to the Supreme Court with reference to this issue and that the same had been denied; and, second, because, in the course of arguing his objection to this procedure before the trial court, counsel made the statement reflected by the record as follows:

“This witness will ultimately be placed on the stand for the Department of Highways."

“In view of the above admission of intention by which counsel was bound, we cannot conceive how any prejudice could possibly have resulted from admitting cross-examination on behalf of defendants. At most, this constituted simply an informality in procedure. In our opinion the allowance of cross-examination by the district judge on the ground that the same constituted no prejudice was eminently correct.” (Emphasis added).
This ruling was extended in State v. Kurtz, 143 So.2d 761 (La.App. 1st Cir. 1962) to include an appraiser whose appraisal was not accepted by the Highway Department in a “quick taking” proceeding. This extension was specifically overruled in Humble Pipe Line Company v. Roy Aucoin, Inc., La.App., 230 So.2d 365 (1st Cir. 1969).
A “representative” of a party under Article 1634 is an officer, agent, or employee having knowledge of the matter in controversy. While an appraiser may be “employed” by a party and have knowledge of the matter in controversy he is not an “employee”, but rather an independent expert engaged in a profession whose professional opinion may not be controlled by the party employing him. The District Court was not in error in refusing to allow the appellant to call on cross examination appraisers hired by the appellee whose appraisals were not accepted by the appellee.
ASSIGNMENT OF ERRORS 2, 4 AND 5.
All but one of the appraisers who testified determined that Tracts II and III had sustained severance damages. The District Court was most impressed by the testimony of the appellees’ appraisers and used their testimony as the basis for determining the amount due as severance damages. The appellant criticizes the use of the appel-lees’ appraisers because of their failure to utilize comparable sales occurring after the taking as the basis for determining the property’s diminution in value. There is testimony that because of the unique nature of the property in question that there exist no true comparables. While comparable sales would be the most convincing foundation for expert opinion, they are not essential where sound reasoning is demonstrated in the formulation of expert opinion. In these cases, a percentage approach can be valid. State, Department of Highways v. Sotile, La.App., 309 So.2d 873 (1st Cir. 1974); State, Department of Highways v. Stein, La.App., 301 So.2d 384 (4th Cir. 1974).
Severance damages as found by the various appraisers were:
TRACT 2 TRACT 3
Kermit Williams $78,317.00 $416,782.00
C. C. Book $93,865.00 $430,373.00
Byron Core $41,462.00 $190,270.00
LeRoy Cobb $24,186.00 $190,270.00
Sam Kennedy $47,497.00
M. C. Gehr $10,941.00 $190,269.00
The District Court, after considering the evidence presented, concluded that Tract II had sustained severance damages of $78,-317.00, 50% of its stipulated value before the taking, and Tract III had sustained severance damages of $308,056.00, 25% of its stipulated value before the taking.
The District Court reached these conclusions after an analysis of the evidence presented. The consideration due these conclusions was stated by the Louisiana Supreme Court in State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972), to be:
“ . . . [T]he effect to be given to opinion testimony is governed by the *1045 weight the trier of fact accords to that testimony. The weight testimony is entitled to receive is determined by the professional qualifications and experience of the expert, the facts and studies upon which his opinion is based and, in case of land appraisals, his familiarity with the locality. La. Power and Light Co. v. Dixon, 201 So.2d 346 (La.App.1967). In all cases the possible bias of the witness in favor of the side for whom he testifies and the witness’ character and credibility bear upon the weight of the testimony. “These are all matters for the trier of fact. And when, as in this case, testimony of the witnesses is contradictory, the finding of the trier of fact will not be overturned unless manifest error appears in the record.”
There is evidence contained in the record upon which the District Court as trier of fact can base its conclusions. After a review of the evidence presented, we find no manifest error.
ASSIGNMENT OF ERRORS 3.
Because this suit was filed before January 1, 1975, the provisions of Act No. 107 of 1954 apply. Therefore, severance damages are to be determined as of the date of trial. This provision was statutorily intended to specify that damages suffered by the remainder should be reduced by special benefits which result from the completion of the project, it was not intended to deprive the owner of compensation for damages sustained by his property because of a general increase in the value of the land between the taking and the trial. State, Dept. of Hwys. v. Society for Propagation, etc., La.App., 321 So.2d 393 (1st Cir. 1975); State, Dept. of Hys. v. William T. Burton Indus., Inc., 219 So.2d 837 (La.App. 3rd Cir. 1969). Severance damages are the difference between the before and after values of the remainder less any special benefits to the remainder as a result of the project. Just as general appreciation in land values is not allowed in diminution of severance damages, so too, zoning changes, resulting from causes other than a completed highway project, may not be employed to offset severance damages. State, Department of Highways v. Mayer, La.App., 257 So.2d 723 (1st Cir. 1971).
ASSIGNMENT OF ERRORS 6.
The record indicates that the District Court intended to award expert witness fees for each appraiser of $500.00 for the time spent in preparation and $200.00 for each day actually spent in court or giving a deposition in Lafayette. Two appraisers were called by the appellee to testify. Kermit Williams prepared a report, spent one day in court testifying and one day in Lafayette giving a deposition. C. C. Book prepared a report, spent two days in court and one day in Lafayette giving a deposition. Therefore, the fee of Kermit Williams is hereby fixed at the sum of $900.00, and the expert fee of C. C. Book is hereby fixed at the sum of $1,100.00, and both sums are taxed as cost herein.
For the above reasons, the judgment of the District Court is affirmed as to the award for just compensation and severance damages and amended to assess as cost, expert witness fees in the amount of $2,000.00. The appellant to pay those costs for which it may be cast.
AMENDED AND AFFIRMED AS AMENDED.