393 So.2d 1142 (1981)
DIVISION OF ADMINISTRATION, STATE of Florida DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Ronald A. SAMTER et al., Appellees.
No. 80-1014.
District Court of Appeal of Florida, Third District.
February 3, 1981.
Rehearing Denied March 4, 1981.
H. Reynolds Sampson, Tallahassee, for appellant.
Brigham, Reynolds, Byrne & Moore and Robert C. Byrne, Miami, for appellees.
Before SCHWARTZ, NESBITT and BASKIN, JJ.
SCHWARTZ, Judge.
The Department of Transportation appeals from a $15,000 jury award and judgment for severance damages[1] to a parcel in northwest Dade County it had condemned for interstate highway purposes. It contends that the sole evidence which supports this aspect of the judgment was improperly admitted at the trial. We agree and reverse.
The property taken, some 3.8 acres of a 10 acre tract, was acquired to construct an embankment so as to permit N.W. 154th *1143 street to pass over the southern end of I-75. The area is presently undeveloped, has no road frontage and is zoned GU (general use) on an interim basis.
In attempting to carry their burden, see City of Fort Lauderdale v. Casino Realty, Inc., 313 So.2d 649, 653 (Fla. 1975), of establishing the existence[2] and amount of damages to the untaken portion of the parcel purportedly caused by the to-be-adjoining embankment, the owners presented the testimony of a single witness, an expert appraiser named John Lukacs. Lukacs avowedly based his opinion on severance damages entirely[3] on sales of vacant property likewise burdened by an adjacent overpass. But, Lukacs said, the only sale he could find, either in Dade or in Broward County, which was comparable in the sense that it involved property with a similar encumbrance, was not comparable in any other respect. Over the D.O.T.'s repeated objections, Lukacs was permitted to extrapolate to the parcels in question below from the percentage of diminution in the sale price[4] caused by an overpass on a parcel in Broward County[5] which (a) had commercial, rather than "general," zoning (b) consisted of a one-half acre site, rather than a 10 acre tract and (c) perhaps most important, was located on a paved, major highway rather than having no road access. Lukacs conformed the therefore obviously non-comparable Broward damages to the present situation simply by reducing them by fifty percent. He testified as follows:
Q. Now to compare GU property with commercial property, do you have to make an adjustment for that, sir?

A. Yes.
Q. In determining the severance damages in this case, did you make such an adjustment?
A. Yes, I did, sir.
* * * * * *
Q. (By Mr. Byrne) Based upon your search, Mr. Lukacs, did you arrive upon some comparable properties to measure the severance damage in question?
A. Yes, sir.
Q. Would you tell us about those, please.
A. These were identified as sales R-4 and R-2.
Sale R-4 took place in May of 1976 between Mr. Bennett and the American National Red Cross involving a vacant tract of land on the south side.
* * * * * *
Q. (By Mr. Byrne) Please continue, Mr. Lukacs.
A. Containing 21,395 square feet on the south side of the embankment of the bridge approach going over I-95 at Broward Boulevard.
That sale took place at the unit price of $1.43 per square foot.
Sale number R-2 which took place August 29, 1978 between Thomas Burns and Stuart Milstein involved commercial property located on the north side of Broward Boulevard east of I-95, but not behind an embankment and contained 27,335 square feet. That sold for a price of $3.35 per square foot.
With respect to the difference between the two, first I adjusted for the difference *1144 in time so that they would be as of the same date, and I used the same rate of one and a half percent per month. This indicated a net differential between the two sales of $2.16 per square foot behind the bank and $3.25 per square foot not affected by the bank. A difference of minus 35 and a half percent. In other words, the property behind the bank sold for 35 and a half percent less per square foot than the property that was not so encumbered.
Recognizing the fact that these properties were commercially zoned and in the area of more urban development than the subject properties, I attributed a 50 percent reduction in the indicated value of these lands and the subject property; that the subject property would not experience in the immediate time period.

I reduced that by 50 percent which gave me a 17 and a half percent value loss. I rounded that to 15 percent and applied the factor of 15 percent to the acreage price as the indicated diminution in value to the remainder parcel.
Q. Would you please apply that 15 percent to the before value of the Samter property and determine severance damage suffered in your opinion as a result of this taking.
A. The area of the damages?
Q. Now you have applied the 15.
* * * * * *
A. (Continuing) With respect to Parcel 139 in estimating the damages to the remainder parcel I have applied a 15 percent reduction to the $28,500 per acre value before the taking, which indicates a loss of $4,275 per acre. The remainder parcel contains 6.159 acres. Multiplying the loss of $4,275 per acre by 6.159 acres, the damage equals $26,300. [e.s.]
It is apparent that this testimony should have been excluded from evidence. Our conclusion to this effect is compelled by an application and amalgam of two accepted principles of law which govern the admissibility of evidence of value in condemnation cases:
(1) It is clear that sales of comparable property may be employed as evidence only when "the land so sold were similar in locality and character to the land in question." 27 Am.Jur.2d Eminent Domain, § 429, at 333 (1966). Accord, Williams v. Jacksonville Electric Authority, 250 So.2d 652 (Fla. 1st DCA 1971); 29A C.J.S. Eminent Domain, § 273(10) (1965); 1 Orgel, Valuation under Eminent Domain, § 138 (2d ed. 1953); see generally, Annot., Admissibility on issue of value of real property of evidence of sale price of other real property, 85 A.L.R.2d 110 (1962). Generally speaking, the question of comparability should be liberally viewed, see Orgel, supra, and is usually a matter for the discretion of the trial court. See, Annot., supra, 85 A.L.R.2d at 126-30, 177; cf., Home Owners of Winter Haven, Inc. v. Polk County, 320 So.2d 480 (Fla. 2d DCA 1975), cert. denied, 336 So.2d 106 (Fla. 1976). Nevertheless, there can be no question that the two parcels sought to be compared in this case were so dissimilar as to the pertinent factors of location, size, use and character as to render evidence of damages to the Broward property inadmissible as a matter of law. See, Annot., supra, 85 A.L.R.2d at 130-40. The mere fact that each piece was burdened with the same type of abutting construction is obviously insufficient to create the requisite similarity. As is said in 5 Nichols, Eminent Domain, §§ 23.4, 23.5 (3d ed. 1979):
A witness should not be allowed to testify that other property in the same general neighborhood was injured by a similar public work a few years before, and a fortiori, witnesses should not be permitted to base their testimony as to damages upon the effect of similar structures in other cities and towns, when the situation was not shown to be the same.
* * * * * *
In jurisdictions in which the actual prices paid for similar lands, or actual rents received from adjoining buildings are admissible to show value before the taking or injury, sales and rentals of similar lands affected by the same or a similar improvement are admissible to show *1145 value after the injury. Evidence of this character is, however, strictly limited to land sufficiently similar to the land injured and to sales sufficiently close in place and time, to have made the evidence competent to show value before the taking or injury. It is not competent in order to prove that the value of a farm in one place was unfavorably affected by the construction of a railroad through it, to show that other farms in other places with similar railroads through them sold for low figures, or even that such farms sold for a high price before the railroad was built and a low price afterward. It is not competent, in order to show the damage to a piece of abutting real estate from the construction and operation of an elevated railway in a public street, to prove that values of similar property in other cities, or in other sections of the same city, suffered a certain percentage of depreciation when an elevated railway was built in the street in front of them. [e.s.]
See also, Williams v. Jacksonville Electric Authority, supra. The reason for this is clear. The comparable sales doctrine is essentially one of relevance. Applying the definition of relevant evidence contained in the Florida Evidence Code, Section 90.401, Florida Statutes (1979), it simply cannot be said that the fact that the Broward property sustained X dollars in severance damages because of the embankment "tend[s] to prove or disprove [the] material fact" of whether or how much damage was sustained by the entirely different parcel involved in this case.
(2) Lukacs' attempt to convert the thus irrelevant to the hopefully relevant by applying a stated percentage of difference between the two parcels[6] runs afoul of the principle that  in this field as in every other, see Holl v. Talcott, 191 So.2d 40, 45 (Fla. 1966)  no weight may be accorded an expert opinion which is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning. Walters v. State Road Department, 239 So.2d 878 (Fla. 1st DCA 1970). It is clear that the 50% figure used to compensate for the admitted dissimilarities in the properties came only from the top of Lukacs' head. Under this doctrine, it could therefore not be employed as a basis for admission of his opinion of value. Any other conclusion would totally destroy the comparability rule. As the court held in City of Garland v. Joyce, 462 S.W.2d 86 (Tex.Civ.App. 1970):
Our decision does not turn on the fact, insisted upon by the appellant, that the 14 sales complained of were properly zoned differently from that of appellee. Our opinion is based on the fact that the sales complained of were simply not sales of comparable property. We are mindful of the extent of the discretion vested in the trial judge in passing on admissibility of sales said to be comparable, and of the rule that such properties need not be identical to the tract in suit. To permit a witness, however, to relate to the jury sales of tracts obviously not similar, and then `adjust' these sales and the prices paid to the opinion of the witness so as to call them `comparable' is to set up an unlimited artificial standard by which almost any conceivable sale could be `adjusted' so as to be made available in support of opinion as to value. 462 S.W.2d at 88.
The result of what happened below is that Lukacs was permitted to state that the instant parcel sustained some severance damage only[7] because the value of completely dissimilar property had been diminished by the same kind of structure.[8] Such *1146 a determination is contrary to the most basic rules of evidence. Apples may not be compared to oranges, even when an expert evaluates the botanical distinctions between them.
For these reasons, the award of $15,000 for severance damages to parcel no. 139 shall be stricken from the judgment under review.
Reversed.
NOTES
[1] There is no claim of error in the $95,000 awarded for the portion actually taken.
[2] The D.O.T.'s expert stated that there were no severance damages whatever.
[3] This is conclusively demonstrated by Lukacs' opinion with respect to the severance damages caused to another parcel which was also involved in the trial below. As to that issue, although he felt there might be some damages, he made no valuation at all because he had located no sales which even he considered comparable.
[4] Lukacs arrived at this figure by the rather sophisticated method of comparing sales of a parcel which had an adjoining embankment with another which was otherwise entirely similar, but which had no such encumbrance. There is no claim that this method of determining damage to the Broward property was inappropriate, only that the use of the resulting amount to compute the damages to the instant property was improper.
[5] If the sales were otherwise comparable, the fact that they took place in an adjoining county is insufficient to justify exclusion. Claiborne v. City of Jacksonville, 260 So.2d 257 (Fla. 1st DCA 1972); Rochelle v. State Road Department, 196 So.2d 477 (Fla. 2d DCA 1967).
[6] We of course do not preclude expert adjustments from sales which are generally and genuinely comparable so as to accommodate the distinctions which to a greater or lesser extent, must always exist.
[7] See note 3, supra.
[8] It is significant that Lukacs did not  perhaps because he could not or was unwilling to do so  express his own expert opinion as to severance damages based on factors other than a comparison with the Broward parcel. Since this is so, we do not address the issues involved in the expression of such an opinion when no comparable sales are available, see, e.g., United States v. 3,727.91 Acres of Land in Missouri, 563 F.2d 357 (8th Cir.1977); Arkansas State Highway Commission v. Steen, 253 Ark. 908, 489 S.W.2d 781 (1973); State, through the Department of Highways v. Finkelstein, 340 So.2d 1040 (La. App. 1976), or whether non-comparables may be used as "data properties" for use only in the expert's formulation of his opinion of value. State v. Dillingham Corp., 591 P.2d 1049 (Hawaii 1979).