624 So.2d 753 (1993)
SUN BANK/NORTH FLORIDA, National Association, a National Banking Association, Appellant,
v.
David C. EDMUNDS and John A. Desalvo, Co-Personal Representatives of the Estate of H. Preston Demery, Appellee.
No. 92-435.
District Court of Appeal of Florida, First District.
September 14, 1993.
Rehearing Denied October 22, 1993.
Jeffrey C. Regan and Gregory F. Lunny of Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for appellant.
Richard G. Rumrell and Michael B. Wedner of Rumrell & Johnson, Jacksonville, for appellee.
KAHN, Judge.
In this proceeding for a deficiency judgment, appellant Sun Bank/North Florida, N.A. challenges a Final Judgment in favor of Defendants pursuant to a jury verdict. Sun Bank challenges (1) the trial court's failure to disqualify an expert or to strike his valuation testimony based on its speculative nature, (2) the trial court's failure to preclude or strike the testimony of the property owner based on his lack of familiarity with the fair market value of his utility company, and (3) the court's denial of plaintiff's motion for new trial based on newly discovered evidence. The first two points are well taken, and we reverse with directions. We do not reach the third issue.
On October 13, 1987, Sun Bank extended a line of credit to El Agua Corporation (El Agua) for $1.4 million for the purpose of financing capital improvements to the El Agua Water and Sewer Utility (Utility). El Agua executed and delivered a promissory note and mortgage securing the payment of the note to Sun Bank. The mortgage pledged the real and personal property of the Utility as collateral for the loan. As additional *754 collateral, the owner of the Utility, H.P. Demery, executed and delivered an Absolute Guaranty of Payment to Sun Bank guaranteeing payment of the obligations from El Agua under the note and mortgage.
El Agua defaulted on the note and mortgage in April, 1989, and Sun Bank successfully foreclosed the lien of the mortgage on the Utility on November 13, 1989. Sun Bank purchased the Utility assets for $750,000 at an advertised public foreclosure sale on December 5, 1989. Sun Bank determined its bid price at the foreclosure sale by taking the last rate base for rate making purposes or the "net rate base" as determined by the Florida Public Service Commission (PSC) for the Utility (approximately $670,000) and arbitrarily adjusted that value upward due to some additional hookups made since the date of PSC's calculation. Sun Bank received a certificate of title on December 18, 1989.
Pursuant to the Summary Final Judgment of Foreclosure, El Agua owed Sun Bank $1,230,361.72, together with interest from the date of the judgment at the rate of 12% per annum. On July 13, 1990, Sun Bank filed a complaint seeking to enforce the guaranty through obtaining a deficiency against Demery personally. On June 26, 1991, the court granted Sun Bank's motion for summary judgment as to Demery's liability on the guaranty. After the court's ruling, the only issue remaining for trial was the fair market value (FMV) of the Utility on the date of the foreclosure sale.
On March 1, 1991, the court granted Demery's motion for continuance and also extended the time for expert witness disclosure. The trial court set pretrial conference for May 30, 1991, set the case for jury trial during the week of June 24, 1991, and required plaintiff to make disclosures of its experts by May 1, 1991 and the defendant to reciprocate by May 15, 1991.
Both parties timely disclosed their experts. However, only one of defendant's five listed witnesses ultimately gave FMV testimony at trial. Defendant Demery listed J.B. Miller, Ronald W. Fussell, Earl B. Miller, H.P. Demery (defendant owner)[1] and Hugh Larkin as experts. J.B. Miller was to be defendant's primary expert on value. Miller, however, testified in deposition that he had no opinion of the FMV of the Utility assets foreclosed in December of 1989 and that he would not testify for Demery at trial. He indicated that he never fully agreed to be Demery's expert.
Demery's counsel moved the court to reopen and extend the deadline for expert witness disclosure so that he could substitute an expert witness for J.B. Miller. On June 5, 1991, over plaintiff's strenuous objection, the court allowed Demery until June 10, 1991 to obtain and disclose a substitute expert for Mr. Miller. Additionally, pursuant to another order entered on June 7, the court allowed Demery to extend the discovery deadline in order to conduct further discovery for use by his as-yet undisclosed substitute expert.
Fourteen days before trial Demery disclosed Robert Nord as his supplemental expert witness. Mr. Nord is a retired civil engineer with 40 years experience in the public and private sectors designing, financing, building, operating, buying, owning and selling utilities. Nord opined that the value of the Utility to the City of Jacksonville in December, 1989 was $1.8 million.
The court allowed Sun Bank's counsel to conduct a voir dire examination of Nord's qualifications and methodology outside the jury's presence. Following voir dire, counsel moved to preclude Nord's testimony on the grounds that there was no identified methodology used and that the testimony was conjectural and speculative. The trial court agreed that "much of what Mr. Nord says may be conjectural"; however, the judge allowed the testimony to be heard by the jury based on Nord's experience and the lack of clear guidelines for determining the valuation of utilities. Nord testified over objection as to the value of the Utility. After his testimony, Sun Bank moved to strike the testimony. The court denied the motion.
H.P. Demery also testified as to the value of the Utility at the time of foreclosure. Before trial, Sun Bank moved in limine to prohibit Demery from testifying as to the *755 FMV of the Utility since Demery testified in his deposition that he did not have the expertise to give an opinion as to the value of the Utility. The court's order on the motion granted the motion unless defense counsel could lay a proper predicate to show that Demery's familiarity with the Utility was sufficient to allow him to testify as an owner/expert. At trial Sun Bank conducted a voir dire examination of Demery and objected to Demery giving an opinion of the value of the Utility at trial. The court overruled the objection and allowed the testimony. Demery testified that the Utility was worth $3-$4 million on the date of the foreclosure sale.
Sun Bank moved again to strike the testimony of Mr. Nord at the close of evidence and moved for a directed verdict based on the contention that the only competent testimony of FMV at trial was the $775,000 valuation of its team of experts. The court denied the renewed motion to strike and reserved ruling on plaintiff's motion for directed verdict until after the jury returned its verdict. The jury returned a verdict finding the FMV of the Utility assets on the date of foreclosure to be $1,237,642.72, the exact amount due plaintiff (with the interest added from the date of the foreclosure judgment) pursuant to its previously obtained summary final judgment of foreclosure. After the verdict, the court denied the pending motion for directed verdict. Sun Bank then moved for Judgment in Accordance with Motion for Directed Verdict or Alternatively for New Trial. Sun Bank also moved for a new trial based on newly discovered evidence. The trial court denied the motions.
We reverse the Final Judgment because the trial court erred both in failing to disqualify expert Nord or to strike his testimony, and in failing to preclude or strike the testimony of the property owner.
Nord's testimony should have been precluded under Petticrew v. Petticrew, 586 So.2d 508 (Fla. 5th DCA 1991), Walters v. State Rd. Dep't, 239 So.2d 878 (Fla. 1st DCA 1970), Boynton v. Canal Auth., 311 So.2d 412 (Fla. 1st DCA 1975), and Division of Administration v. Samter, 393 So.2d 1142 (Fla.3d DCA 1981), rev. denied, 402 So.2d 612 (Fla. 1981). In Petticrew, the court held speculation and conjecture are inadmissible to prove the value of property. In Walters v. State Rd. Dep't, supra at 882, the court noted that the expert used no authorized appraisal formula and made subjective adjustments which could not be rebutted. See also Division of Administration v. Samter, supra (no weight may be accorded an expert opinion which is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning).
Here, expert Nord used no formula in determining the value of El Agua. Rather than using a hypothetical purchaser to determine fair market value of the Utility at the time of the foreclosure sale, Nord evaluated the fair market value of El Agua using only the City as the purchaser. However, he admitted that he did not employ the formulas or procedures actually used by the City to determine El Agua's fair market value.
Nord estimated the value of El Agua's equivalent residential connections (ERCs) to be $1,000. He testified that he got this value "out of his head" based on his experience rather than by using any type of formula or calculation. He multiplied the number of ERCs by the number of customers to arrive at a $1.9 million value.
Nord rounded the value of the Utility up to $2.2 million by applying the gross revenue multiple[2] of 6.2 from Canal Utilities (another local utility, formerly held privately) to El Agua. Canal Utilities is a much larger utility than El Agua. It is located in the same area as El Agua and was purchased by the City of Jacksonville in 1990 for $7.3 million over a 25 year period. Although Nord compared El Agua to Canal, he did not conduct any sort of comparative analysis of the physical characteristics of the two utilities, did not inspect either facility, and did not take into consideration the City's cost of integrating the facilities with the City's system or the cost of phasing out portions of the facilities. He *756 also failed to reduce Canal's purchase price to its present value. Nord admitted that the City does not use multiples of gross revenues or ERCs in calculating purchase prices for utilities.
Nord then reduced his determination of El Agua's fair market value from $2.2 million to $1.8 million. Nord did not use a particular methodology or formula to reduce the value. Instead, he simply indicated that based on his familiarity with El Agua and its deficiencies, the value should be reduced.
Similar to the experts in Walters and Boynton, supra, Nord, when asked for the formula used in arriving at his conclusion, testified that it was just a matter of judgment. Nord, like the experts in the above cases, indicated that the adjustments were estimates on his part and involved a judgment factor. Under Petticrew, Walters, Boynton, and Samter, we find error in the admission of Nord's opinion of FMV.
The trial court likewise erred in allowing Demery to testify to the value of the Utility because Demery, although an owner, lacked sufficient familiarity with the property to give a permissible opinion. In Salvage & Surplus, Inc. v. Weintraub, 131 So.2d 515 (Fla. 3d DCA 1961), the appellant contended that the evidence was admissible under the general rule which permits an owner of property to testify as to its value though not qualified as an expert. The court noted, "that rule ... is based upon [an owner's] presumed familiarity with the characteristics of the property, knowledge or acquaintance with its uses and purposes and experience in dealing with it." Id. at 516. The court held that the owner "must be shown to have knowledge regarding the property and its value sufficient to qualify him." Id. In Trailer Ranch, Inc. v. Levine, 523 So.2d 629 (Fla. 4th DCA 1988), the court likewise observed: "[T]he presumption that an owner is sufficiently familiar with property to give an admissible opinion as to its value is a fragile one. If it be shown that the owner ... does not have such familiarity, the opinion evidence is not admissible." Id. at 632. In Trailer Ranch, Mrs. Levine was familiar with the day-to-day operation of her business; however, she did not have any real concept of the value of the business. She gave raw data to the accountant, who pieced together a composite picture of the financial condition of the business.
In the case at bar, Demery did not have sufficient familiarity with the Utility and its value. In Demery's deposition the following discussion occurred:
Q. Do you yourself have an opinion as to what the value of the utility was in December 1989?
A. No, sir. In that it's so, it's so mixed up as far as I can tell that I have no way to have an opinion.
Q. And you would have to rely upon others to give you advice as to what the value of the utility was?
A. That's correct, sir.
.....
Q. Are you aware that El Agua Corporation incurred a net operating loss for the years 1985 through 1989?
A. I  no. I don't think I am.
.....
Q. What is the basis of the personal opinion you gave Mr. Wedner that you thought the value of the utility when it was foreclosed was worth more than the judgment? How do you come to that determination?
A. I do not know that except we use to, we talked about it quite often and I had, some way or another I had in mind that some day we were going to sell these utilities for about six million dollars.
Q. But you yourself don't have any particular expertise that gives you the ability to make a fair market valuation of the utility; do you?
A. I do not have that expertise.
On voir dire, Demery revealed that during the entire time he owned the Utility, he always had a management company manage it for him and always had somebody else handle the financial aspects of the Utility and the accounting. He admitted he was not familiar with the PSC's rules and regulations and was not familiar with how to calculate rate base or anything of that nature.
*757 Demery's testimony on cross-examination punctuated his lack of personal knowledge and familiarity upon which to predicate a fair market valuation:
Q: You've just indicated that you thought that the utility would have been worth $3 to $4 million in December of 1989, but the utility, you don't have an opinion as to what the value of the utility was in December of 1989, do you?
A. I don't know exactly.
Q. And you don't consider yourself to have any particular expertise, that gives you the ability to make a fair market valuation of the utility, do you sir?
A. I learned from others.
Q. But you, yourself, have no expertise to do that, sir?
A. I do not know that.
The trial court erred in allowing the testimony of Nord and Demery, which constituted the only evidence of value offered by the defense. The only competent FMV testimony remaining is that of Sun Bank's experts. For this reason, we reverse the trial court's final judgment and remand for entry of a new order based on the testimony of Sun Bank's experts. We decline to grant a new trial due to the fact that appellee had ample time to conduct discovery and obtain an expert before the trial given the trial court's order extending the time to disclose experts and subsequent orders further extending the deadline for expert witness disclosure and extending the deadline for discovery. In the Order on Defendant's Motion to Reopen and Extend Deadline for Disclosure of Expert Witness, for Leave to Substitute Additional Expert Witness and for Continuance, the trial court denied the motion for continuance and the motion to reopen and extend deadline for disclosure except with respect to substitution of an expert for Mr. J.B. Miller.
We REVERSE and REMAND for entry of a judgment allocating the fair market value of the Utility at $775,000.00.
BOOTH and BARFIELD, JJ., concur.
NOTES
[1] Mr. Demery has passed away since the trial.
[2] The gross revenue multiple of 6.2 was found by taking the gross revenue of Canal and dividing it into Canal's sale price.