239 So.2d 878 (1970)
George A. WALTERS and Myrtle H. Walters, His Wife, Appellants,
v.
The STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, Appellee.
No. L-493.
District Court of Appeal of Florida, First District.
September 17, 1970.
Rehearing Denied October 26, 1970.
*879 Dawson, Galant, Maddox, Boyer, Sulik & Nichols, Jacksonville, for appellants.
Howard Hadley and Geoffrey B. Dobson, Tallahassee, for appellee.
CARROLL, DONALD K., Acting Chief Judge.
Two landowners in a condemnation proceeding have appealed from a final judgment entered by the Circuit Court for Duval County, based upon a jury verdict.
The principal question presented for our determination in this appeal is whether the testimony of the condemnor's sole witness as to his evaluation of the appellants' property and business damages was so speculative and conjectural as to be inadmissible in evidence and hence could not provide a legal basis for the jury's verdict.
The appellee, the State Road Department of Florida, a state agency, filed the present proceeding to take certain lands in Duval County for the purpose of highway construction, including lands owned by the appellants, referred to in the petition as Parcel No. 5. The landowners filed their answer to the petition, claiming compensation for the taking and damages to their business, and trial was had before a jury, which returned a verdict assessing the appellants' compensation in the sum of $44,297. A final judgment based upon the said verdict, was entered by the court, and this appeal followed.
Prior to the taking, the appellants' property consisted of a parcel of property fronting on North Main Street (U.S. Highway 17), north of the then city limits of Jacksonville, near a community known as Oceanway. The property had 150 foot frontage on Main Street and a depth of 500 feet. On the northerly portion of the parcel was erected a large concrete block building and on the southerly portion was located the appellants' residence. There were also various other outbuildings and improvements. The appellants owned and operated a furniture store in the concrete block building, with a parking area in front of it. The shoulder of the highway in the vicinity of the appellants' property was level, and vehicles could drive off the street at any place along their property and drive directly to the parking lot in front of the furniture store. The property actually taken in this eminent domain proceeding consists of the front 51.75 feet of the appellants' premises.
The testimony at the trial showed that the furniture store, prior to the taking, was a very profitable business venture. The parties stipulated that the appellants' residence was totally destroyed by the taking, and all witnesses agreed that the concrete block building, in which the furniture store was located, was constructively destroyed by the taking. The petitioner's witness assigned to the concrete building a "$1,000 salvage value."
The only expert witness called by the petitioner at the trial to testify regarding his opinion of the compensation to which the appellants were entitled was Earl Miller, an appraiser.
Although the parties stipulated that the median strip in the middle of the highway would render the appellants' property inaccessible from the southbound lanes of the highway and there would be a ditch three feet deep in front of their property, rendering the appellants' remaining property less accessible, the trial court ruled that the appellants were not entitled to adduce evidence of damages to the remainder of their property and that the appellants' attorney could not argue severance damages to the jury. The trial court also refused to instruct the jury on severance damages.
*880 The constitutional and statutory provisions of this state directly involved in this appeal are as follows:
Article X, Section 6, of both the 1885 and 1968 Constitutions of the State of Florida, F.S.A., provides in pertinent part:
"No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."
Section 73.071, Florida Statutes, F.S.A., provides:
"Where less than the entire property is sought to be appropriated, any damages to the remainder caused by the taking, including * * * the effect of the taking of the property involved may damage or destroy an established business of more than five years' standing, owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party, the probable damages to such business which the denial of the use of the property so taken may reasonably cause; * * *."
As mentioned above, the only expert witness called by the petitioner at the trial was the said Miller, an appraiser, who testified as to the method he used in evaluating the entire property taken. He testified that he arrived at the value of the land by the "market approach," the value of the residence by the "replacement" or "cost approach," and the concrete block building by the "income or economic approach." After arriving at the value of the three primary component parts, in each instance using a different method of appraisal, Miller lumped the three valuations together to arrive at his opinion as to the value of the total property taken. In making the adjustments, no recognized standard or other formulae were used  the adjustments were obviously purely subjective. On cross-examination the following testimony was elicited from Miller concerning his method of appraisal and mental adjustments:
"Q. Where did you get the formula for this adjustment?
"A. It's just a matter of judgment on the part of the appraiser in regard to time, how much time will affect the property, how much location will affect the property, how much depth will affect the property.
"Q. You do have appraising manuals, don't you?
"A. Yes, sir.
"Q. I mean appraisers have standard recognized appraising manuals?
"A. Oh, yes.
"Q. Do you find any information in those appraising manuals as to how to compute these adjustments as to what factors to compute?
"A. No, sir."
* * * * * *
"Q. So, how much did you enhance this property in its better location, or how much did you decrease it to make it fit the subject property?
"A. Rather than go into the ups and downs of how much for each one, I made an overall adjustment factor of 110 per cent which is simply combining an adjustment for date of sale, offset somewhat by adjustment for location.
"Q. I'd like you to tell the jury how you got to that, you use an adjustment for date of sale and an adjustment for location, now, which percentage did you adjust to what to come out to 110 per cent?
"A. This is an overall adjustment estimate.
"Q. How did you get to it, you had to adjust up to make a 1961 sale applicable *881 to a 1968 situation, didn't you?
"A. Yes, sir.
"Q. But you had to adjust down in order to make Eastport Road 
"A. Yes, sir.
"Q. The Eastport Road location fit the subject property?
"A. Yes, sir.
"Q. All right, so how much did you go up on one and down on the other to make them come out to 110 per cent?
"A. I can't tell you.

"Q. You just said 110 per cent out of the clear blue?
"A. No, sir, I didn't.
"Q. I would like for you to tell us how you did it.
"A. I can sit down and work backwards for maybe twenty or thirty minutes. When I worked these things out originally, I work out the adjustment  they work out a hundred one, one point one two, and rather than put in a complicated composite adjustment I round them off.
"Q. I am just asking for the formula, you don't want to tell the jury how you did it?
"A. Well, I can't.

"Q. That's true on these other adjustments that we used, you can't?
"A. That's right.

"Q. You arrived at some adjustment that you applied to a so-called comparable and came out to today's value of this property, that's what happened, isn't it?
"A. That's the method I used."

* * * * * *
"Q. That's where you made one of these mental adjustments of saying this is better located, is that correct?
"A. Yes, sir.
"Q. And notwithstanding what you told Mr. Stockton here in redirect examination when you were explaining this adjustment, when you boil it all down, these adjustments are just simply  are what you determine should be done with reference to a particular comparable in order to make it applicable to the subject property, isn't that true?
"A. They are estimates on my part.
"Q. Estimates on your part?
"A. Yes, sir." (Emphasis supplied.)
The testimony of Miller, the petitioner's only expert witness at the trial on the subject of the compensation to be awarded to the appellants, as his testimony is explained in the above-quoted excerpts, was, in our opinion, inadmissible in evidence for the reason that his testimony was essentially speculative and conjectural and falls within the ban of the decisional law of this state, under the constitutional guarantee of "full compensation" when property is taken in eminent domain proceedings.
One of the basic rules of evidence in this state and other jurisdictions is that testimony that is essentially speculative and conjectural is inadmissible to prove the value of property. This court had occasion to invoke that rule in Williams v. Simpson, 209 So.2d 262 (Fla.App. 1968), involving the analogous field of valuation for tax purposes. Regarding the testimony of the tax collector's appraiser, we said:
"The appellants contend that Osborn's appraisal, admittedly based upon "ultimate potential for commercial usage" which Osborn estimated would not come into being for five years and further based upon the assumption that the property *882 should and could be rezoned, was an appraisal based upon speculation and conjecture and, therefore, is not competent evidence to be considered in determining valuation for tax assessment purposes. We agree."
In our opinion, Miller's valuation testimony in the case at bar is much more speculative and conjectural than was Osborn's in the Williams case. In his testimony, quoted above, Miller admitted in effect that in his appraising he used no authorized formula for his mental adjustments  testifying: "It's just a matter of adjustment on the part of the appraiser. * * *"; that he had found no information in the standard recognized appraising manuals as to how to compute his mental adjustments of value; that "I can't tell you" how much he went up on one and down on the other "to make them come out to 110 per cent"; that he could not tell the jury how he worked out the mental adjustments. In the light of this evasive and secretive testimony, when admitted in evidence before the jury, the position of the appellants was made almost untenable, for there was no way to rebut a secret, purely subjective, formula that existed, if at all, only in the mind of a partisan appraiser. A jury verdict, based in whole or in part upon such testimony, is necessarily in derogation of the constitutional guarantee of "full compensation."
In addition, we think that the trial court erred in refusing to allow the jury to consider and award business damages to the appellants. The latter duly claimed business damages in their answer to the petition in condemnation, and the evidence at the trial and the stipulations of the parties showed that damages to the appellants' furniture business had flowed from the taking. They were entitled to recover business damages under Section 73.071, Florida Statutes, F.S.A. quoted above, as well as under the constitutional guarantee of "full compensation." Nevertheless, the trial court ruled that the appellants were not entitled to adduce evidence as to the damages to the remainder of their property and that their attorney could not argue severance to the jury. The court further refused to instruct the jury on severance damages. These rulings constituted reversible error under the above statutory and constitutional provisions, as well as under the decisional law of this state.
For the foregoing reasons, the final judgment appealed from herein must be, and it is, reversed as to the appellants, and the cause is remanded with directions for a new trial to be held in consonance with the views hereinabove set forth.
Reversed and remanded with directions.
WIGGINTON and RAWLS, JJ., concur.