311 So.2d 412 (1975)
William J. BOYNTON, Jr., et al., Appellants,
v.
The CANAL AUTHORITY of the State of Florida, a Body Corporate under the Laws of the State of Florida, Appellee.
No. V-291.
District Court of Appeal of Florida, First District.
April 24, 1975.
*413 L. Ralph Smith, Jr. and W. Taylor Moore, III, of Smith & Moore, Tallahassee, for appellants.
Ralph E. Elliot, Jr., Jacksonville, for appellee.
BOYER, Acting Chief Judge.
Appellants here seek reversal of a final judgment entered in an eminent domain proceeding, being the same land and case as that involved in Boynton v. Canal Authority, Fla.App. 1st 1972, 265 So.2d 722.
*414 Appellants, who will hereinafter be referred to as the landowners, initially held fee simple title to approximately 632 acres of land, extending northerly from the thread of the Ocklawaha River. In 1965 appellee sought to acquire the fee simple title to 540 acres of that property, located adjacent to and upstream of the Rodman Dam, for the purpose of flooding 520 acres as part of the Rodman Pool (now known as Lake Ocklawaha), the other 20 acres constituting a 300 foot "collar" of land between the pool and the landowners remaining 92 acres of upland. In that proceeding the trial court declined to allow the Canal Authority to condemn the fee title to the 540 acres, whereupon an Order of Taking was entered on January 3, 1966 vesting in the Canal Authority, instead of the fee simple title, a "perpetual right and easement."[1]
In 1968 another suit was filed to acquire the fee simple title to the same 540 acres of land, leaving the 92 acres of upland still in the ownership of the landowners.[2]
A trial was held in September of 1970 for the purpose of determining the compensation to be awarded to the landowners for the taking of the fee in the 540 acres of land in which the Canal Authority already had an easement interest, including severance damages to the remaining 92 acres of upland. The final judgment entered on the jury verdict was appealed and reversed by this Court.[3]
A second trial was held in March of 1973, culminating in a hung jury and a resulting mistrial.
In September of 1973 a third trial was held following which a final judgment was entered on February 21, 1974. It is that final judgment which is here appealed.
Though not presented as a point for resolution on this appeal, virtually all of the problems arising in this case result from an interpretation (or misinterpretation) of the "perpetual right and easement" condemned and taken by the Canal Authority in the first eminent domain proceeding. That interest taken is described in the final judgment rendered in the first eminent domain proceeding as follows:
"* * * the perpetual right and easement to enter upon, and permanently or intermittently overflow, flood and submerge the lands in connection with the operation and maintenance of the Cross-Florida Barge Canal Project; also, the right to regulate and maintain water levels as may be required for the impoundment and maintenance of Rodman Pool as a part of the navigable waters of the United States; the right to regulate, prohibit and control use and/or removal of water from the right-of-way; the continual right to clear all or any part of the lands of any trees, bushes, debris, or other obstructions or structures and dispose of the materials cleared and to maintain the areas cleared; together with the right to prevent the construction of or maintenance of structures for human habitation; the right to exercise any other right not otherwise enumerated for such other purposes as may be needed in preservation and maintenance of the project; reserving, however, to the Defendant owners all rights normally accruing to riparian owners, including full ingress and egress, subject to the above-described easement and subject further to the rules and regulations of the United States Army Corps of Engineers as applied to other navigable waters."
It is readily apparent that the interest remaining in the landowners after rendition of the final judgment in the first eminent domain proceeding is determinative of what interest remained for condemnation *415 in the second proceeding. Of even greater significance is the effect, by way of severance damages, of the second taking on the landowners remaining 92 acres.
The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the Court.[4] If the language used in a judgment is ambiguous then it may be construed, but if the language employed is plain and unambiguous there is no room for construction nor interpretation, and the effect thereof must be determined in the light of the literal meaning of the language used. In construing a judgment, however, the adjudication should not extend beyond that which the language used fairly warrants, since the purpose and function of construction is to give effect to that which is already latent in the judgment, and the Court may not by construction add new provisions to a judgment which were omitted or withheld in the first instance. In construing judgments the legal effect, rather than the mere language used, governs. A judgment must be construed in light of the situation of the Court, what was before it, and the accompanying circumstances. In cases of ambiguity or doubt the meaning of the judgment must be determined by that which preceded it and that which it was intended to execute. If a judgment cannot be interpreted from the language in the judgment itself, the entire record may be examined and considered for the purpose of interpreting the judgment and determining its operation and effect.[5] A judgment should be construed with reference to the issues raised in the case and which are intended to be decided, and the scope of the judgment is not to be extended beyond the issues raised in the case, or the state of facts and situation of the parties existing at the time of the action.[6]
In construing ambiguous judgments the ordinary rules of evidence apply. The best evidence should be resorted to. Ordinarily the record, including the pleadings and transcript of the proceedings, will be the best evidence. Depending upon the adequacy of the record, circumstances may justify testimony from knowledgeable persons as to the issues raised in the case and the state of facts and situation of the parties existing at the time of the entry of the judgment. Such witnesses may not, of course, be permitted to testify as to what the judge intended the judgment to mean. That is the prerogative of the court.
In the case sub judice the landowners proffered, out of the presence of the jury, certain testimony of the attorney for the Canal Authority in the first proceeding. The same attorney was permitted, without objection before the proffer, to answer certain questions relative to the first proceeding which gave rise to the entry of the ambiguous final judgment. An objection to the proffer was sustained and a motion to strike the questions and answers was granted. Our examination of the record reveals that neither the proffered testimony nor that which was stricken met the requirements of admissibility hereinabove recited. Although the correct and better procedure is to timely object to inadmissible evidence, we do not find that the striking in the case sub judice, upon belated objection and motion, constitutes reversible error.[7]
The second point raised by appellant landowners relates to the refusal of the learned trial judge to strike the testimony of the real estate appraiser called as *416 an expert witness by the Canal Authority. That point is well taken and requires reversal.
While testifying to the basis for his appraisal, the witness stated as to the use of the 540 acres that the landowners "couldn't do anything with it unless they have the express permission of the easement owner." He further stated "* * * it's entirely possible the Canal Authority and the Corps of Engineers can fence that collar and keep the upland owner from getting to the water in any event." There is nothing in the record to indicate that the Court had so construed the remaining rights of the landowners after the initial condemnation of the perpetual easement, nor is there any evidence in the record to buttress that interpretation. If the attorney for the Canal Authority in the first proceeding could not legally testify as to the meaning and effect of the judgment in that case, a fortiori neither could the Canal Authority's appraiser in the case sub judice.
Further, the testimony of the Canal Authority's appraiser is remarkably similar to that condemned by this Court in Walters v. State Road Department, Fla.App. 1st 1970, 239 So.2d 878. In the Walters case, when asked for the formula used in arriving at his conclusion, the expert whose testimony was challenged stated that it was just a matter of judgment. He further testified that the "adjustments" made by him were merely estimates on his part. Sub judice, the Canal Authority's appraiser testified that he estimated the total damages to be $1,000.00, $800.00 of which he attributed to the value of the property rights taken and the remaining $200.00 to severance damages suffered by the upland 92 acres. He testified that he relied upon 12 sales in arriving at his opinion, but when asked how he utilized those sales he replied that it was "a judgment factor". When asked if that was the best he could answer the question he replied "That's all I can answer." On cross-examination it was revealed that the same expert witness testified at the two previous trials on the issue of value. At the first trial he stated that the rights taken were only nuisance rights valued at a nominal sum of $1,000.00. No severance damages were included in that sum. At the second trial he again testified that the full compensation was $1,000.00 but he allocated $500.00 for severance damages and $500.00 as the value of the property interests taken. The third trial produced a completely different ratio between severance damages and the value of the property interests taken. No formula could be explained nor could he cite any textual or recognized basis for his conclusion.
In Walters v. State Road Department, supra, this Court said:
"* * * In his testimony, quoted above, Miller admitted in effect that in his appraising he used no authorized formula for his mental adjustments  testifying: `It's just a matter of adjustment on the part of the appraiser. * * *'; that he had found no information in the standard recognized appraising manuals as to how to compute his mental adjustments of value; that `I can't tell you' how much he went up on one and down on the other `to make them come out to 110 percent'; that he could not tell the jury how he worked out the mental adjustments. In the light of this evasive and secretive testimony, when admitted in evidence before the jury, the position of the appellants was made almost untenable, for there was no way to rebut a secret, purely subjective, formula that existed, if at all, only in the mind of a partisan appraiser. A jury verdict, based in whole or in part upon such testimony, is necessarily in derogation of the constitutional guarantee of `full compensation.'" (239 So.2d at page 882)
Appellants have filed a timely motion pursuant to Rule 3.16(e) FAR and F.S. 73.131(2) for an order awarding attorneys' *417 fees for services incident to this appeal. That motion is granted, with instructions to the trial court, being in a better position than are we to take testimony and evidence as to the amount which will constitute a reasonable sum as such compensation, to fix and determine the amount thereof.
For the foregoing reasons, the final judgment appealed from be and it is reversed and this cause is remanded with directions for a new trial to be held in conformity with the views herein expressed.
Reversed and remanded with directions.
MILLS, J., concurs.
McCORD, J., specially concurs.
McCORD, Judge (specially concurring).
I agree with the foregoing opinion with the exception that I find no error in the appraiser of appellee's testimony as to the use of his judgment in his determination of the value of the property with the burden of the easement upon it as opposed to what its value would be without the burden of the easement. He used his comparable sales only to arrive at the value of the property without the easement upon it and then used his judgment to arrive at the diminished value resulting from the burden of the easement. I do not find that appellant questioned the method by which the appraiser used his comparable sales to arrive at the value of the land if the burden of the easement were not upon it. Where the appraiser ran into difficulty was in trying to answer appellant's cross-examination question as to how he related his comparable sales to the value he arrived at after making his judgment reduction in value because of the easement. This was a false comparison he was called upon to make. The comparable sales were used only to arrive at the no easement value and not the value with the easement.
NOTES
[1] Final judgment was subsequently entered in accordance with the Order of Taking awarding compensation to the landowners for the interests taken.
[2] An Order of Taking the fee interest in the 540 acres has not been appealed and is not here involved.
[3] Boynton v. Canal Authority, supra.
[4] See Zalka v. Zalka, Sup.Ct.Fla. 1958, 100 So.2d 157 and 49 C.J.S. Judgments § 436 and cases there cited.
[5] 49 C.J.S. Judgments § 436.
[6] 49 C.J.S. Judgments § 441.
[7] Please see Jones on Evidence, § 28.5 and Thompson v. State, 1908, 55 Fla. 189, 46 So. 842.