ERVIN, Judge.
Appellant, Turkey Creek, Inc. (TCI), appeals a final order in which the trial court granted the summary judgment motion of appellee, City of Gainesville (City), and denied TCI’s motion for summary judgment. The parties’ dispute hinges upon a provision stated in a stipulation entered into between these parties, which was incorporated into a final judgment rendered in 1981. Each party claims that the provision is unambiguous, yet the interpretation that each asserts is diametrically opposed to the other's. We conclude that the provision is ambiguous and that the trial court must review the entire record of the prior case to determine the legal effect of the disputed provision.
In 1972, Westel, Inc., the predecessor in title to TCI,[1] purchased certain properties and had them rezoned by the Alachua County Commission to a broad commercial category, “BH.” The properties were annexed into the City of Gainesville in 1979. Following annexation, the City sought to *1057 downzone the properties, but met with objections from Westel based upon a vested-rights letter which Westel had obtained from the Department of State dated January 6, 1977. In 1981, the City sued TCI and its predecessors in title to resolve the zoning and other developmental issues. On April 21, 1981, the City and TCI and its predecessors entered into a stipulation in which the City agreed to rezone the property to various commercial categories. In Item E thereof, the parties addressed the City’s drainage requirement for TCI’s property in Northwood Center, as follows:
The storm water drainage system for the entire area which is known as Northwood Center, and which has previously been approved by Alachua County, and the City of Gainesville staff, shall be accepted by the City of Gainesville as meeting its drainage ordinances and requirements. The ‘runoff coefficient’ shall be that as stipulated and approved by Ala-chua County, and shall be applicable to the entire drainage system in Northwood Oaks Subdivision, Northwood Pines Subdivision, Pineridge Subdivision, and Northwood Center, rather than to each unit or phase separately.
On May 21, 1981, the circuit court ratified the stipulation and incorporated it into its final judgment.
During the next eight years, TCI sold all but about five acres in Northwood Center. In early 1988, TCI sought to plat the five acres into legal building lots, and also sought site-plan approval to build a restaurant called “Family Diner” on one of the parcels. The City denied approval of these requests because TCI refused to construct additional drainage facilities over and above those that had been accepted by the City in 1981.
TCI filed suit against the City, seeking declaratory and injunctive relief and damages, on the ground that the 1981 final judgment required the City to accept the existing Northwood Center storm water drainage system as meeting the City’s drainage ordinances and requirements so long as future development was within the new zoning classification. The City moved for summary judgment, asserting that the 1981 judgment had provided that the City accepted the storm water drainage system for Northwood Center as meeting its drainage ordinances and requirements as they existed in 1981, for the degree of development present in the area at that time. The City asserted that the stipulation and judgment did not abrogate the inherent police power of the City to require retention or detention ponds or other drainage management structures required for the public safety as a result of development occurring on the property after 1981. Even assuming arguendo that the stipulation was intended to estop the City from permanently exercising its right to require drainage improvements for future development, the City claimed that any such agreement would be void and unenforceable as contrary to public policy.
The trial court denied TCI’s motion for summary judgment and granted the City’s motion, finding that the 1981 judgment
did not and does not relieve the Plaintiff, or its successors and assigns from complying with codes, regulations and ordinances of the CITY OF GAINESVILLE relating to stormwater management systems and structures to be required by additional development on the property which is the subject of this suit. Conversely, the CITY OF GAINESVILLE is not precluded by the terms of the judgment of May 21, 1981, from requiring the construction of reasonably necessary stormwater management systems and structures as a precondition to further development of the Plaintiff’s property.
It is evident to us, based upon the record on appeal, that the trial court construed the 1981 final judgment without resorting to the record in the earlier case. Although counsel for both parties at the summary judgment hearing agreed that the judge could rule on the effect of the final judgment by construing the language of the judgment alone, we consider that the ambiguity of the disputed provision nonetheless precludes such an approach. As this court stated in Boynton v. Canal Auth., 311 So.2d 412, 415 (Fla. 1st DCA *1058 1975), the legal operation and effect of a final judgment is a question of law for the court. If the language in that judgment is unambiguous, the court must determine the legal effect of the language in question. When the language of the final judgment is ambiguous or open to doubt, the court may examine the entire record to determine the operation and effect of the judgment. Id.
In the disputed provision, the City accepted something which had already been approved by Alachua County, and the staff of the City of Gainesville. Alachua County and the City staff may have: (1) approved a storm water drainage system for the entire parcel, which the City then accepted as encompassing the rezoning scheme included elsewhere in the stipulation, or (2) approved the drainage system only for the development plan of North wood Center as it then existed, which apparently consisted entirely of residences and a shopping center and which did not encompass TCI’s proposed restaurant. As we are unable to decipher what was intended by Item E in the parties’ stipulation, we remand this case to the trial court to determine whether the meaning can be ascertained by considering materials in the prior record other than those before us.
The City argues that if the disputed provision is construed to favor the construction argued by TCI, then the judgment was invalid and unenforceable, based upon the well-established principle that a municipality cannot contract away its police powers. Herr v. City of St. Petersburg, 114 So.2d 171, 175 (Fla.1959); State v. City of Tampa, 113 So.2d 844, 847 (Fla.1959); Hartnett v. Austin, 93 So.2d 86, 89 (Fla.1956) (en banc). Although the latter statement of law is correct, this doctrine would have rendered the 1981 judgment voidable rather than void. However, the judgment —which, after all, was a consent judgment — was not challenged on appeal, and may not now be collaterally attacked. Stewart v. Berger, 109 So.2d 765 (Fla. 1959).
 Notwithstanding this, it would clearly be unduly harsh for the environmental integrity of a municipality to be undermined by a past decision that forever bound the City. Therefore, if the trial court concludes on remand that the 1981 judgment relieved TCI from having to upgrade the drainage system in Northwood Center, the City should have the opportunity to show that changed circumstances nevertheless warrant new drainage requirements. It is a general rule that a zoning classification which has been judicially approved will be upheld under the doctrine of res judicata “until a change in conditions warrants a different result.” Starkey v. Okaloosa County, 512 So.2d 1040, 1043 (Fla. 1st DCA 1987). Accord City of Miami Beach v. Prevatt, 97 So.2d 473 (Fla.1957), cert. denied, 355 U.S. 957, 78 S.Ct. 543, 2 L.Ed.2d 532 (1958). A former judgment sanctioning a zoning classification is regarded as res judicata if there exists in the prior and current actions identity between the parties, or those in privity with them, and identity of the causes of action. Thomson v. Petherbridge, 472 So.2d 773 (Fla. 1st DCA 1985). Identity of causes of action “means an identity of the facts essential to the maintenance of the action.” Prevatt, 97 So.2d at 477. Therefore, a party challenging the validity of a prior judgment may show that the facts essential to the prior judgment have significantly changed so as to defeat a finding of res judicata. As stated by the Supreme Court,
In fast growing [geographical] areas ... changes occur with great rapidity; it cannot, therefore, be said that, even where the same parties are involved, an adjudication of the reasonableness of a zoning ordinance at any given time is necessarily res judicata or constitutes an estoppel by judgment in subsequent litigation between the same or different parties.
Id. Accord Coral Reef Nurseries, Inc. v. Babcock Co., 410 So.2d 648 (Fla. 3d DCA 1982); Aronovitz v. Metropolitan Dade County, 290 So.2d 536 (Fla. 3d DCA 1974), cert. denied, 297 So.2d 837 (Fla.1974). The rationale for permitting zoning changes based upon change of circumstances is fully applicable to the drainage issue. The *1059 City shall on remand be given the opportunity to show changed circumstances which may have had the effect of rendering the 1981 judgment unenforceable.
The City contends that the facts set out in the affidavit submitted by the director of the City’s engineering department would justify imposition of additional drainage requirements, and thus the City has already established the existence of changed circumstances. We do not decide whether the affidavit is adequate, but instead point out that this is an issue of fact. The trial judge and the parties appeared to agree at the summary judgment hearing that the judge was asked to determine only the declaratory portion of TCI’s amended complaint. If this assumption is correct, the court was restricted to ruling that the City either does or does not have the authority to impose additional drainage requirements under the language of the 1981 judgment. If the trial court decides on remand that the City does not, the issue of changed circumstances must then be addressed.
REVERSED and REMANDED for further proceedings consistent with this opinion.
BOOTH and BARFIELD, JJ., concur.

. Westel merged into N.W., Inc., which subsequently merged into TCI.