LOGUE, J.,
dissenting.
I believe this case warrants en banc review. Whether or not the majority’s opinion is correct, the decision will impact the 83,630 homeowners whose trees were destroyed and the budget of the State of Florida. Because “the outcome of the case (or its notoriety) is of greater moment or impact within the community” and “the case is important beyond the effect it will have on the litigants,” this matter presents a textbook example of a case of exceptional importance that should be considered en banc, even under the very exacting, but proper standard set forth by Judge Shepherd in University of Miami v. Wilson, 948 So.2d 774, 791 (Fla. 3d DCA 2006) (Shepherd, J., concurring);[1] see also Fla. R.App. P. 9.331(d). A mistake now will hurt tens of thousands of homeowners and even more taxpayers. In such circumstances, we would be prudent to follow the old adage of carpenters “to measure twice and cut once.”
This conclusion is particularly true because, as Judge Rothenberg explains in her dissent, the method of valuing the trees proposed by the homeowners’ appraiser is deficient as a matter of law. While Judge Rothenberg demonstrated that the method of valuation was fatally flawed under the law governing damages for class actions, the method of valuation is equally flawed under the law governing damages in eminent domain.
At the outset, the analysis of the method of valuation in eminent domain must focus on the appraiser’s assignment. The homeowners’ appraiser had the task of calculating the value of each citrus tree owned by a member of the class and destroyed by the Department of Agriculture and Consumer Services as part of its Citrus Canker Eradication Program. To accomplish this assignment, the appraiser adopted a method of valuation that relied upon three characteristics of each tree to be valued: (1) height; (2) condition; and (3) location. The appraiser testified that he had information from the Department for each tree’s height and condition, but that he had *1137 no information regarding any tree’s location. Given the methodology chosen by the appraiser himself, the lack of information on location is the rub.
Because the appraiser lacked the required individual information of each tree’s location, he was forced to use a substitute. Instead of using the actual information regarding each tree’s location, the appraiser manufactured a generic factor of .75 to adjust for the value attributable to the tree’s location. Here, he deviated from accepted appraisal practices in a manner that caused his method of valuation to be fundamentally flawed in two ways.
I.
The first flaw is that the appraiser was unable to provide any discernible, fact-based chain of reasoning to explain how he derived the generic factor of .75 to adjust for location. When asked to explain how he determined the adjustment of .75 for location, the appraiser explained, “I just— again, an appraisal is a subjective art and I felt that was a reasonable discount.” He repeatedly referred to his use of adjustments as “subjective.”
In eminent domain, just like any other field of law, “no weight may be accorded an expert opinion which is totally concluso-ry in nature and is unsupported by any discernible, factually-based chain of underlying reasoning.” Div. of Admin., State Dep’t of Transp. v. Samter, 393 So.2d 1142, 1145 (Fla. 3d DCA 1981).
In the leading case in this area, Walters v. State Road Department, 239 So.2d 878 (Fla. 1st DCA 1970), the court overturned a jury verdict based upon an appraisal in which the appraiser could not explain how he determined the adjustments used in reaching his value. Noting that “there was no way [for the opposing party] to rebut a secret, purely subjective, formula that existed, if at all, only in the mind of a partisan appraiser,” the court held that a value based on such testimony “is necessarily in derogation of the constitutional guarantee of ‘full compensation.’” Id. at 882.
In case after the case, Florida courts have rejected valuations in eminent domain cases where the appraiser could not explain the basis for his or her adjustments. In Samter, for example, this Court overruled a jury verdict in an eminent domain case where an appraiser could not explain his 50% adjustment to a comparable sale such that “[i]t is clear that the 50% figure ... came only from the top of [the appraiser’s] head.” 393 So.2d at 1145; see also Ayers Estate v. Hernando Cnty., 706 So.2d 349, 350 (Fla. 5th DCA 1998) (striking an appraiser’s testimony because “[a]l-though he said that he ‘used market data, interviews with [persons] and other materials ... to come up with these adjustments,’ on cross-examination he would not or could not produce any of the market data or names of persons to support his statements.”) (second alteration in original).
Turning to this case, the testimony of the homeowners’ appraiser regarding the location adjustment clearly came from nowhere other than the top of the appraiser’s head, like the testimony rejected in Sam-ter. The testimony of the homeowners’ appraiser that his adjustments were “subjective” and that he “felt” a certain adjustment was reasonable is more subjective, conclusory, speculative, and conjectural than the appraisal testimony rejected in Walters. It is defective as a matter of law.
II.
There is a second, independent flaw in the method used by the homeowners’ appraiser. Even if the appraiser could explain how he arrived at his generic factor *1138 of .75, such a “one-size-fits-all” adjustment cannot reasonably be expected to arrive at the actual value of individual trees whose value will vary based upon their different locations according to the homeowners’ appraiser’s own methodology.
As mentioned above, to separately value each of the individual trees owned by the different plaintiffs and class members, the appraiser adopted a method that requires the following individual information for each tree: (1) height; (2) condition; and (3) location. For each tree, he was provided the height and condition, but not the location. Because he lacked the required individual information of each tree’s location, the appraiser manufactured a generic factor of .75 to adjust for the value attributable to the tree’s location. But the appraiser’s attempt to substitute actual location information specific to each tree by using a generic adjustment of .75 only guarantees an inaccurate result.
This fundamental flaw can be illustrated by a simple analogy. Imagine that a tailor plans to sew a pair of pants for each student in a graduating class using three measurements: (1) inseam; (2) outseam; and (3) waist size. For each student, he is given the inseam and outseam, but not the waist size. He makes the pants, nevertheless, by using a waist size of 26 as a generic measurement instead of the actual waist size of each student. When the pants are donned by the students, the results will, of course, be silly, if not downright comical. Many students will be unable to close the front of their pants; others will have their new pants fall around their ankles. It would be pure happenstance if any pair of pants actually fit any particular student. That is exactly the case here.
Using a generic, “one-size-fits-all” adjustment for location no more solves the problem of the missing information regarding the location of each tree than using a generic factor for waist size solves the problem of the missing waist sizes in the hypothetical. The results are bound to be not merely inaccurate, but ludicrous. Some trees will be overvalued; some trees undervalued; and no tree is likely to receive its actual fair market value.
This inherent flaw causes the proposed method of valuation to fall woefully short of the objective and verifiable methods required in eminent domain proceedings in this state to ensure that the injured party receives no more and no less than “full compensation.”
For these reasons, I respectfully dissent from the decision of the majority to deny rehearing en banc. I would rehear this matter, reverse the order certifying the class, and remand this matter to allow the class representatives to propose a valuation method that would provide full valuation for each tree lost by a homeowner.
ROTHENBERG and SALTER, JJ., concur.

. "[W]e should consider en banc review only if: (1) the outcome of the case (or its notoriety) is of greater moment or impact within the community rather than its effect upon the law of the state, and either (a) the case is important beyond the effect it will have on the litigants or (b) will affect the ability of other potential litigants to seek their own remedies, or (2) the outcome of the case may reasonably and negatively influence the public’s perception of the judiciary's ability to render meaningful justice.” Wilson, 948 So.2d at 791.