# Third District Court of Appeal

## State of Florida

Opinion filed April 29, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D12-3430 & 3D13-987
Lower Tribunal No. 10-46125

_____

**R. Randy Gonzalez, et al.,**
Appellants/Cross-Appellees,

vs.

**Carlos M. Barrenechea, etc., et al.,**
Appellees/Cross-Appellants.


Appeals from the Circuit Court for Miami-Dade County, Jerald Bagley, Judge.

Coffey Burlington P.L., and Kevin C. Kaplan, for appellants/cross-appellees.

Cole, Scott & Kissane, P.A., and Scott A. Cole and Kathryn L. Smith; White & Case LLP, and Raoul G. Cantero, for appellees/cross-appellants.


Before SUAREZ, SALTER, and LOGUE, JJ.

LOGUE, J.

ON MOTION FOR REHEARING

We grant appellees' motions for rehearing in part, vacate the prior majority opinion issued January 21, 2015, and issue the following opinion in its stead.

R. Randy Gonzalez ("homeowner") appeals from a final judgment in his action against Ramon Pacheco and his design firm, Ramon Pacheco and Associates, Inc. (collectively, "the Pacheco defendants"). After a bench trial, the trial court awarded the homeowner direct damages for his costs in redesigning and replacing the air conditioning system in his newly constructed home. The trial court, however, refused to award damages for the loss of the use of the home while this work was being done because the trial court found the estimate too speculative as a matter of law. We reverse on this point and remand with instructions for the trial court to consider the estimate of value and determine the amount of loss of use damages in its capacity as the finder of fact.

## FACTS AND PROCEDURAL HISTORY

The homeowner hired the Pacheco defendants to design his new home including the air conditioning system. After the home was completed, the homeowner discovered that the air conditioning system did not adequately cool the home. As a result, the homeowner could not move in. Pacheco was advised of the

2

problems with the air conditioning system, but did not take actions to remedy them.

The homeowner hired a new design firm to address the problems. The air conditioning system was subsequently repaired, requiring a twenty-month process. According to the trial court's findings of fact, this process involved "extensive demolition work" that "was destructive, messy, and intrusive with the home unsuitable for living throughout the process." During the twenty-month demolition and repair period, however, the homeowner's son slept in the home intermittently, serving as a de facto security guard. Also, the homeowner stored at the house a boat, some cars, and the furniture he had purchased for the home.

The homeowner filed a complaint against the Pacheco defendants for the negligent and defective design of the air conditioning system. At trial, the homeowner sought both direct damages for the costs incurred in replacing the faulty air conditioning system and loss of use damages stemming from his inability to move into the home during the repair period. To establish the amount of his damages for the loss of use of the home, the homeowner presented the testimony of a real estate appraiser. The homeowner's appraiser was the only valuation expert who testified at trial. Based on comparable rentals in the area, the appraiser testified that the rental value of the home, during the repair period, was $15,500 per month. On cross-examination, however, the appraiser admitted that he was

3

unaware that the homeowner's son was sleeping at the residence to serve as a security guard and that the homeowner stored his boat, some cars, and the furniture at the house. When asked if there would be a rental market for a home considering those facts, the appraiser testified that "[t]here would be a rental market for it, but it would be somewhat diminished for that needed garage storage and needed use of the dock." He also admitted that he had not conducted that analysis.

Following a bench trial, the trial court entered detailed findings of fact and conclusions of law. The trial court concluded that "the preponderance of the evidence at trial was that the System's design was defective, in breach of the [Pacheco] Defendants' legal obligations." It found that the homeowner and his family "were unable to move into the home during this 20 month period." The trial court awarded the homeowner $77,919 in direct damages for the redesign and repair of the air conditioning system.

The trial court denied loss of use damages, however, finding that such damages were "too speculative" as a matter of law because (1) the appraiser purportedly admitted that there was no market for the subject property, considering the fact that the homeowner's son had slept at the home as a security guard and that the homeowner had stored a boat, car, and furniture at the house during the demolition and repair period; and (2) the appraiser failed to make adjustments for these uses. As a result, "the Owner's claim for loss of use against Mr. Pacheco and

the Firm therefore fail because the damages are too speculative and insufficient expert opinion exists to establish same." These appeals followed.

## ANALYSIS

The primary issue presented on appeal is whether the homeowner's estimate of loss of use damages was too speculative as a matter of law.[1] We hold that it was not.

Under Florida law, a homeowner that loses the use of a structure because of delay in its completion is entitled to damages for that lost use. Russo v. Heil Constr., Inc., 549 So. 2d 676, 677 (Fla. 5th DCA 1989). Florida courts have held that "[d]amages for delay in construction are measured by the rental value of the building under construction during the period of delay." Fisher Island Holdings, LLC v. Cohen, 983 So. 2d 1203, 1204 (Fla. 3d DCA 2008); see also Vanater v. Tom Lilly Constr., 483 So. 2d 506, 508 (Fla. 4th DCA 1986) ("Where a contractor breaches a contract by failing to complete an improvement, the owner is entitled to damages for delay in completion measured by its rental value during the period of delay.").

In the first place, the trial court stated that the appraiser admitted there was no market for the subject property because the son slept at the property and the boat, cars, and furniture were stored there. Of course, if the evidence supported a

---

[1] We affirm, without discussion, the issues raised on appeal by the Pacheco defendants.

5

finding that there was no market for the subject property, then the estimate of value would indeed be too speculative as a matter of law. A review of the record, however, reveals the appraiser never testified that there was no market for the subject property.

To the contrary, when directly asked on cross-examination whether a market existed in these circumstances, the appraiser answered, "[t]here would be a rental market, but it would be somewhat diminished for that needed garage storage and needed use of the dock." The only testimony on this point was that a market did exist, but the value would be diminished. The trial court's finding that there was no market is directly contradicted by the undisputed testimony in the record. It was error to conclude that the appraiser's estimate was too speculative as a matter of law on this basis.

Second, the trial court found the appraiser's estimate was too speculative because it failed to reflect adjustments for the homeowner's son sleeping in the house as a guard and for the storage of the cars, boats, and furniture. Under Florida law, "the plaintiff must present evidence regarding a reasonable certainty as to its amount of damages, and a plaintiff's claim cannot be based upon speculation or guesswork." Regions Bank v. Maroone Chevrolet, L.L.C., 118 So. 3d 251, 257 (Fla. 3d DCA 2013) (citations and quotations omitted). At the same time, "Florida law has long specified that reasonable certainty as to the facts of injury and

6

causation is more critical than reasonable certainty as to the computation of the resultant losses." <u>Maggolc, Inc. v. Roberson</u>, 116 So. 3d 556, 558 (Fla. 3d DCA 2013). With these principles in mind, we turn to the question of whether the appraiser's failure to make adjustments for these factors made his estimate of value tantamount to speculation and guesswork.

A nearly identical issue was considered in the case of <u>State Road Department v. Falcon, Inc.</u>, 157 So. 2d 563 (Fla. 2d DCA 1963), albeit in the context of eminent domain. The appraiser for the State was not aware of, and therefore did not properly consider, an option to purchase relating to a crucial comparable property. As occurred in the instant case, this failure was brought out during the cross-examination of the appraiser. When the jury returned a verdict in favor of the State, the trial court set it aside as based upon the appraiser's estimate of value, which, the trial court found, was incompetent as a matter of law for failure to consider or adjust for this factor. Framing the issue as whether "the failure to consider one transaction render the testimony incompetent," the appellate court held that such failure went to the weight, and not the legal sufficiency, of the evidence:

> Upon examination of relevant authority, both in the cases and the texts, the conclusion is inescapable that the failure of an otherwise competent expert witness to consider one of numerous factors involved in assessing compensation goes not to his competency or the competency of the testimony but only to the weight of the testimony.

Id. at 566.

Similarly, in Florida Department of Transportation v. Armadillo Partners, Inc., 849 So. 2d 279, 287 (Fla. 2003), the State's appraiser may have overlooked one aspect of severance damages, the loss of an arbor area in a shopping mall, in reaching its estimate of those damages. The appellate court set aside a jury verdict in favor of the State on the grounds that the appraiser's estimate of value was insufficient as a matter of law for the failure to make the necessary adjustment. Quoting the above language from Falcon, which it expressly found to be "correct" and "persuasive," the Supreme Court reversed. Id. at 287. It held that

> an appraiser's opinion may be subject to impeachment or to having its weight reduced because of its failure to properly consider one of the many factors that may influence an opinion as to value, but that failure should not prevent the opinion's admission, nor cause its complete exclusion from the jury's consideration.

Id. at 287-88. Accordingly, "even had DOT's expert failed to include the arbor area in his valuation of severance damages, we conclude that this exclusion would have gone to the weight, not the admissibility of his testimony." Id. at 288.

Of course, notwithstanding the holdings in Falcon and Armadillo Partners, there may be cases in which an appraiser's failure to make, or inability to explain, essential and material adjustments renders his or her valuation too speculative as a matter of law. See generally, Div. of Admin. v. Samter, 393 So. 2d 1142, 1145 (Fla. 3d DCA 1981) (finding appraisal legally insufficient because its estimate of

8

value "is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning"); Walters v. State Rd. Dep't, 239 So. 2d 878, 882 (Fla. 1st DCA 1970) (finding appraisal legally insufficient when it was based upon "a secret, purely subjective, formula that existed, if at all, only in the mind of a partisan appraiser"). This case is not one.

Here, the appraiser reached his estimate of rental value using three comparable rental properties. The appraiser's testimony was supported by a twenty-page appraisal admitted into evidence without objection. The appraisal included maps, photographs, and detailed descriptions of the subject property and the three comparable rentals. It also included a narrative and chart that provided a numerical breakdown showing how the appraiser adjusted the comparable rentals to the subject property for factors such as rent concessions, location/view, design and appeal, age/condition, square footage and room count, and amenities such as pools, barbeque grills, terraces, docks and garage size. The appraiser's testimony was admissible as a prima facie case for the value of the lost use of the home during the repair period. See Fisher Island Holdings, 983 So. 2d at 1204; Falcon, 157 So. 2d at 566; Armadillo Partners, 849 So. 2d at 287. The Pacheco defendants did not object to the admission of the estimate of value and never sought to strike the estimate from evidence.

Placed in this context, the missing adjustments are not sufficiently large or material on their face to render the estimate insufficient as a matter of law. In fact, the son sleeping at the house as a de facto guard is not a basis for any adjustment, much less a large one. This alleged "use" was more of a burden than a benefit to the homeowner. The son did not "reside" or "live" in the house. To the contrary, because of the design defects, the trial court noted, "[t]he Home was hot, humid, and without sufficient air flow" and the remedial construction work "was destructive, messy, and intrusive, with the Home unsuitable for living throughout the process." Instead of using the home as a residence, the undisputed evidence indicated the son stayed overnight in the house only to guard it. After he stayed overnight, the son returned to his parents' home in order to eat, shower, launder his clothes, and live with his family.

Indeed, in the findings of fact, the trial court specifically found that this alleged "use" was no use at all:

> During the 20 month period that the System was being re-designed and repaired, Gonzalez's son, Randy Gonzalez, Jr., intermittently slept at the Home. He served as a de-facto security guard, and let the construction workers into the Home in the morning. At trial, no evidence was presented that Gonzalez Jr. did anything other than stay in one bedroom, which he was able to cool by closing vents in other parts of the Home. The Court finds that this did <u>not</u> constitute "use" of the Home, and certainly was not consistent with the parties' expectations.

Rather than hiring private security, the owner used his son as a guard. Far from a "use" of the property, this course of action constituted a good faith mitigation of damages. The trial court erred in finding that the absence of an adjustment for this purported "use" makes the appraiser's estimate too speculative.

The only remaining issue concerns the adjustment for the storage. No testimony established the value of such storage. The appraiser did testify that the market value "would be somewhat diminished" if an adjustment was made for the storage, but there was no testimony as to what "somewhat diminished" actually meant in these circumstances. If the missing adjustment for the storage was large enough to remove the estimate of value outside the range of reasonable rental values, its absence obviously made the estimate speculative. If, however, the missing adjustment for storage was too small to remove the estimate of value outside the reasonable range of rental values, its absence obviously did not make the estimate speculative.

While the boat, the cars, and the furniture were stored at the property during the demolition and repair process, there was no testimony that the homeowner or his family visited to access the boat or enjoy the furniture. To the contrary, the house was uninhabitable during the entire period. The property was essentially a construction site. The value of storing items at a construction site with no apparent access to, or enjoyment of, the stored items does not appear on its face to be large

compared to the $15,500 per month rent commanded by the subject, high-end property. An adjustment for the value of storage, therefore, cannot be presumed as a matter of law to remove the estimate of rental value from the range of fair rental values, as least without evidence so indicating. Thus, this case remains squarely in the ambit of the holdings of Falcon and Armadillo Partners.

Moreover, the need for the storage arose from the design and construction defects caused by the Pacheco defendants. Obviously, as the trial court recognized during the hearing, "when people are waiting for a home to be built they start buying things, be it furnishings and others and it comes to a point in time where you got to have it delivered, you have to have it stored if you can't eventually move it in or if you move it in you have to protect it." Rather than rent space for the necessary storage, the owner used the property for storage. Like utilizing the son as a security guard, storing these items on the property under construction appears more like a mitigation of damages than a beneficial use.

Under these circumstances, to attack the expert's opinion of fair rental value as too speculative as a matter of law, the Pacheco defendants needed to do more than merely establish that the expert failed to make certain adjustments. They also needed to establish that the failure to make those adjustments was material in the sense that the failure to make the adjustments removed the estimate from the range of fair market value. They have not done so. Without such a showing in these

circumstances, this case fails squarely within the holdings of <u>Falcon</u> and <u>Armadillo Partners</u>. The appraiser's failure to consider the missing adjustments goes, at most, to the weight of his estimate of value and not to its legal sufficiency.

**CONCLUSION**

The appraiser's failure to make an adjustment for storage goes to the weight, not the legal sufficiency, of the appraiser's estimate of fair rental value. <u>Falcon</u>, 157 So. 2d at 566. The appraiser's estimate, however, is subject "to having its weight reduced because of its failure to properly consider one of the many factors that may influence an opinion as to value." <u>Armadillo Partners</u>, 849 So. 2d at 287. We therefore reverse the part of the judgment that held that the homeowner's estimate of the loss of use damages was insufficient as a matter of law. We remand for the trial court to accept the estimate as legally sufficient, give it due consideration, and determine the loss of use damages in its capacity as the finder of fact.[2]

Affirmed in part; reversed in part; remanded.

SALTER, J., concurs.

---

[2] Because the parties rested their respective cases, nothing in this opinion should be read to indicate that either party may reopen the record for the introduction of new evidence as a matter of legal right.

SUAREZ, J. (concurring in part, dissenting in part).

Once again, I concur in part and respectfully dissent in part from the majority's opinion on rehearing in this appeal. I join the majority in affirming the trial court's findings as to the architect's liability and the damages awarded to redesign and reconstruct the air conditioning system in the new house. I must again respectfully dissent from the majority's reversal of the trial court's order on the loss of use claim. I agree with the trial court's denial of the loss of use damages claim as the claim was not supported by the evidence and the applicable law.

The Homeowner chose to claim rental value of the home as his basis for the loss of use damages.[3] The problem at trial was that the Homeowner's expert

---

[3] Loss of use is recoverable under Florida law. Loss of use damages are only recoverable, however, when an owner suffers a complete deprivation of use of his property. Schryburt v. Olesen, 475 So. 2d 715, 717 (Fla. 2d DCA 1985); AT&T Corp. v. Lanzo Const. Co., Fla.; 74 F. Supp. 2d 1223, 1224-25 (S.D. Fla. 1999). In Schryburt, the Court stated that

Second, the court awarded $57,722 for loss of use from February

witness testified as to the rental value of comparable residences, but learned for the first time at trial that, in fact, during the time in question the Homeowner was using parts of the property for his own use. The Homeowner kept his boat tied up to the dock behind the house. He stored over $500,000 worth of furniture in the house and stored his cars in the garage. These additional facts – not set forth in the Complaint – came out at trial during the expert's cross-examination; the Homeowner did not disclose in the Complaint his partial use of the property over the time period for which he claimed a total loss of use. Thus, as the plaintiff's expert witness admitted, the comparable rental values on which he based his opinion were inaccurate. The plaintiff's expert testified that he assumed for purposes of his rental valuation calculations that the entire property would have

---

> 1980 through December 1983, based upon expert testimony of the cost of renting a similar home for that period of time. Appellees continued to reside in the home throughout most of this time period. We recognize that in order to recover for loss of use it is not necessary to actually obtain comparable property. See Meakin v. Dreier, 209 So. 2d 252 (Fla. 2d DCA 1968), and Alonso v. Fernandez, 379 So. 2d 685 (Fla. 3d DCA 1980). However, in both Meakin and Alonso, the plaintiff was deprived of complete use of the property, thus distinguishing those cases from the case before us. In our case, there was no such deprivation of complete use of the property. We hold that the court erred in awarding damages for loss of use in these circumstances. This item is also stricken from the award.

Schryburt, 475 So. 2d at 717. Here, the plaintiff Homeowner did not set forth in the initial pleading all facts necessary to support the issue of total loss of use. The defendant was thus precluded from the outset from asserting any affirmative defense of set-off or adjustment.

15

been available to a prospective renter, including the use of the garage, the boat dock, and unrestricted use of the main residence without use by anyone other than the tenant and his or her guests for the duration of the rental period. He stated at the trial that he was not prepared to give a valuation of the loss of use with those newly presented factors included. The Homeowner did not ask for a continuance when the new information came to light at trial.

The trial court found that the Homeowner failed to prove his claim for damages for total loss of use because the new evidence presented at trial revealed that there was not, in fact, a total loss of use of the property as claimed, and the rental valuations testified to were consequently inaccurate. The trial court correctly stated in its detailed findings of fact and conclusions of law that the expert appraiser's testimony at trial was

> too speculative to be relied upon as a basis for damages in this matter. While there may be adjustments that could be made to the $15,500 per month figure, there was nothing in the record from which those adjustments can be made. The Owner's claim for loss of use against Mr. Pacheco and the Firm therefore fail because the damages are too speculative and insufficient expert opinion exists to establish same.

The trial court denied the claim for total loss of use, and I agree with that conclusion. To find otherwise, the trial court as the trier of fact would have had to guess at an accurate amount of damages. The majority now remands this case back to the trial judge to do just that: to guess at a damages figure given the same record and based upon the original inaccurate rental valuations, which the finder of

16

fact has stated were "unreliable and too speculative to be relied upon as a basis for damages."

The majority appears to arrive at its decision that there is sufficient evidence to require the finder of fact to arrive at a dollar amount for loss of use because, as it states, the appraiser's testimony was supported by a twenty page appraisal admitted into evidence, with maps, photos and detailed description of the three comparable rentals. The problem is, however, once the expert testified that based on the facts that the Homeowner's house did not have the dock available to the renter, did not have the garage available to the renter, did not have all living quarters available to the renter, and he could not say what a revised valuation could be, that twenty page appraisal was no longer accurate. The expert stated his figures had to be adjusted downward and he was not prepared to do that at trial. Consequently, accurate comparable rental figures for a property with less than a total loss of use were never presented as evidence. The majority does not specify what evidence the trial court is to use for its new calculations.

The majority further bases the reversal on a factual assumption that the missing damage calculation adjustments for the Homeowner's use of parts of the property during the loss of use period are "not sufficiently large or material to render the estimate insufficient as a matter of law." A trial court must, however, base its valuation of an asset upon competent substantial evidence. Greer v. Greer,

17

438 So. 2d 535 (Fla. 2d DCA 1983); <u>Novak v. Novak</u>, 429 So. 2d 414 (Fla. 4th DCA 1983).[4] In the present case, the court determined that no award could be made because the Homeowner's expert admitted his data were based on flawed facts and assumptions, that as a result he could not make an accurate rental valuation and that a revised rental valuation would likely decrease. Significantly, the trial court determined that the Homeowner's expert "did not offer an opinion about the estimated rental value based on the actual, restricted use of the property that would have been available to prospective renters during the presumed rental period." Which is to say, the facts necessary to an accurate rental valuation do not

---

[4] <u>See</u> <u>Florida Ventilated Awning Co. v. Dickson</u>, 67 So. 2d 215 (Fla. 1953) ("Before damages may be awarded, there must be evidence authorizing or justifying award of a definite amount."); <u>Berwick Corp. v Kleinginna Inv. Corp.</u>, 143 So. 2d 684 (Fla. 3d DCA 1962) ("It is well established that before damages may be awarded, there must be evidence authorizing or justifying the award of a definite amount."); <u>Kennedy & Ely Ins., Inc., v. Am. Emp'rs Ins. Co.</u>, 179 So. 2d 248 (Fla 3d DCA 1965) (holding that before damages may be awarded there must be evidence authorizing or justifying the award of a definite amount, which cannot be predicated upon pure speculation."); <u>United Steel & Strip Corp. v. Monex Corp.</u>, 310 So. 2d 339 (Fla 3d DCA 1975) ("It is incumbent upon a plaintiff in a trial court to present evidence to justify an award of damages in definite amount. Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating an amount in money with reasonable certainty."); <u>Hunt v Dorsey Young Const.</u>, 385 So. 2d 732 (Fla. 4th DCA 1980) ("Evidence as to amount of damages cannot be based on speculation or conjecture, but must be proven with certainty.); <u>Camper Corral, Inc. v Perantoni</u>, 801 So. 2d 990 (Fla 2d DCA 2001); <u>Taylor v Lee</u>, 884 So. 2d 222 (Fla 2d DCA 2004) ("[it] is incumbent upon the party seeking damages to present evidence to justify an award of damages in a definite amount"); <u>Fisher Island Holdings v. Cohen</u>, 983 So. 2d 1203 (Fla. 3d DCA 2008) (holding it is in the province of the finder of fact to determine the amount of damages).

exist in this record. See Smith v. Austin Dev. Co., 538 So. 2d 128, 129 (Fla. 2d DCA 1989) (finding testimony that $15,000 would be a "fair assessment" or "good gauge" of expense of restoration of leased premises recoverable against lessee was insufficient to satisfy "reasonable certainty" test for damage award against lessee, holding that damages cannot be based upon speculation or guesswork, but must have some reasonable basis in fact). Where there are no facts to support a financial conclusion, that conclusion must fail. Nowhere in this record is there any evidence that the "missing [downward rental valuation] adjustments are not sufficiently large or material to render the [original, unadjusted] estimate insufficient as a matter of law." Even if it were an issue of law, there is still no evidence in the record upon which this conclusion could be drawn. To comply with the majority's directive the trial court will be engaging in speculation as to the adjusted amount of damages, contrary to established law. "Damages cannot be based upon speculation or guesswork, but must have some reasonable basis in fact." Id. at 129.

The majority relies on two cases to support its opinion that the expert's testimony was sufficient to warrant an award of damages: State Road Department v. Falcon, Inc., 157 So. 2d 563 (Fla. 2d DCA 1963), and Florida Department of Transportation v. Armadillo Partners, Inc., 849 So. 2d 279 (Fla. 2003). Neither of the cases is applicable to the issue in the present appeal. In Falcon, an eminent domain case, experts for both sides testified as to the value of property taken and

19

used comparables to arrive at their valuation opinions. Neither expert considered in their valuation assessments a particular land transaction in the area which took place after the date of taking. This evidence was brought out at trial, the jury was apprised of the details of the transaction, including the amount involved. The trial court then granted a new trial based on its conclusion that the petitioner's expert failed to properly evaluate the one post-taking transaction in its property valuation opinion. The appellate court reversed the trial court, and remanded the issue consistent with the jury verdict based on the substantial record evidence to support the verdict. The Second District concluded the expert's failure to consider the post-taking land deal in the valuation was not grounds to exclude the testimony but went to the weight of the evidence. Unlike Falcon, in the case before us the trial court did not exclude the expert's valuation testimony, but weighed it and found it lacking in sufficient data to support a less-than-total loss of use rental valuation. Unlike Falcon, there was no record evidence presented by the Homeowner's expert of the value of a partial loss of use rental.

In Armadillo, another eminent domain case, the Florida Supreme Court reversed the District Court's decision to strike the expert witness's opinion testimony, stating "an appraiser's opinion may be subject to impeachment or to having its weight reduced because of its failure to properly consider one of the many factors that may influence an opinion as to value, but that failure should not

prevent the opinion's admission, nor cause its complete exclusion from the jury's consideration." Armadillo, 849 So. 2d at 287-88 (Fla. 2003). Again, in the case before us, the trial court did not strike the testimony of the expert witness, but as finder of fact, weighed the evidence presented. In the case before us, the Homeowner's expert's testimony as to what he believed the rental value to be based on a total loss of use – *without* the additional facts of partial loss of use – was thus inadequate to enable the trial court to make a fair monetary determination, and the trial court correctly found that the Homeowner had not proven damages for total loss of use. See Trailer Ranch v. Levine, 523 So. 2d 629 (Fla. 4th DCA 1988) (reversing damage award where the evidence of loss of business was insufficient to support that aspect of the jury verdict and judgment awarding damages); Ross v. Bandi, 566 So. 2d 55 (Fla. 4th DCA 1990) (reversing where the record reflected that appellant's expert accountant could not determine the corporation's value because the books that she needed to make this valuation were not made available to her).

The expert's evidence was competent as far as valuing a total loss of use, but he was unable to present any comparable valuation data for a partial loss of use. As a result, the trial court was unable to determine with any certainty what the revised rental comparable would be, however great or small, as a result of the owner's use of certain aspects of the house.[5] The Homeowner's expert's testimony

was admittedly based on incorrect assumptions and facts. The Homeowner proved damages for loss of use of a much larger space than actually existed during the timespan sued for. He should not be overpaid for what the record shows is an admittedly flawed loss of use rental valuation. The trial court had, and will have on remand, no evidence, no data, no hard numbers in the record to even guess at what damages figure would prove "not sufficiently large or material to render the [original] estimate insufficient as a matter of law." For this reason, I respectfully dissent, and would affirm the trial court's detailed and well-reasoned decision on this issue.

---

[5] The majority asserts the trial court stated that "the appraiser purportedly admitted that there was **no** market for the subject property," but this is a misstatement of the record and Order on appeal. The Order states that the expert,

> further admitted that if he assumed the property was in partial use during the period, he would have to revise the rental value downward, at the least, *and may not be able to opine there was a market at all*, . . . or if a market existed for the rental of a single family residence in which the renter could not (i) make use of the garage because the landlord's cars were stored there, (ii) make use of the dock because the landlord's large boat was stored there, (iii) make use of their own furniture within the residence because the landlord's furniture was stored there . . . and that the expert *would have to conduct additional research and analysis to form an opinion about the reasonable rental value, if any,* during the period in question." [e.s.].